**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ROBERT LUCAS,                           :
                                        :     CIVIL ACTION
                  Plaintiff,            :
                                        :
        v.                              :
                                        :
CITY OF PHILADELPHIA,                   :
                                        :     NO.  11-4376
                  Defendant.            :

FILED
 13
By
 CLERK

**MEMORANDUM**

BUCKWALTER, S. J.                                      February 13, 2012


        Currently pending before the Court is a Motion to Dismiss by Defendant City of

Philadelphia ("Defendant" or "the City").  For the following reasons, the Motion is granted and

the Complaint is dismissed without prejudice to Plaintiff's leave to amend.

## I.      FACTUAL HISTORY

        According to the facts set forth in the Complaint, Plaintiff Robert Lucas, an African-

American male, was a full-time employee of the City of Philadelphia Water Department ("Water

Department") from February 16, 1998 until September 16, 2010.  (Compl. ¶¶ 3, 12.)  In

September 1999, Plaintiff began to work at the Flow Control Department as a maintenance

apprentice in instrumentation at the Water Department's office located at 3801 Fox Street,

Philadelphia, Pennsylvania.  (Id. ¶¶ 3, 13.)   After testing and qualifying, Plaintiff became an

electronic technician and eventually was classified as an electronic technician II.  (Id. ¶ 14.)

From 2000 to 2009, Plaintiff's supervisor was Harry Adams. (Id. ¶ 15.) Following Adams's promotion, Frank Francesco became Plaintiff's supervisor. (Id.) Both Adams and Francesco habitually excluded Plaintiff from most training opportunities, which inhibited his ability to fully learn his job and to qualify for more work opportunities and overtime. (Id. ¶ 16.) For example, the supervisors would not allow him to attend presentations on new equipment, while inviting white employees to attend and participate. (Id.) In addition, he was the only electronic technician II not allowed to rotate equipment and trucks, which impaired his ability to be trained on certain pieces of equipment. (Id.) Moreover, Francesco would micro-manage Plaintiff's work to an extent not experienced by white employees by coming out to Plaintiff's job site every day just to observe his work, inspect his mileage sheets, review work, and correct alleged errors in front of other employees. (Id. ¶ 17.) The supervisors also changed Plaintiff's paperwork without properly annotating the changes. (Id. ¶ 18.) Finally, Francesco made comments about Plaintiff taking a lunch breach outside of his work area, while white employees were not chastised for the same thing. (Id. ¶ 19.)

In 2009, Plaintiff began complaining to his supervisors about the purported disparate treatment and harassment because of his race. (Id. ¶ 20.) His supervisors ignored and laughed off his complaints without conducting any investigation. (Id.) As alleged retaliation for these complaints, Plaintiff was issued a five-day suspension and given a negative review in August 2010. (Id. ¶ 21.) No other workers were given any reviews that August, and this was Plaintiff's first negative review since he had been employed by Defendant. (Id.)

As a result of Defendant's purported discrimination, harassment, and retaliation, Plaintiff suffered from stress and anxiety disorder. (Id. ¶ 22.) When his doctor recommended that he not

return to his then-current work environment, Plaintiff contacted an individual named Maxine
Maluso about transferring to another work location.  (Id. ¶ 23.)  She denied his request and told
him that his only option was to return to Fox Street.  (Id.)  Because Plaintiff felt he could not
physically work at Fox Street due to the discriminatory conditions, he was "constructively
discharged" from his job in September 2010.  (Id. ¶ 24.)

On July 7, 2011, Plaintiff initiated the current action setting forth three causes of action.
Count I asserts a violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.  Count II
claims a violation of the Pennsylvania Human Relations Act.  Finally, Count III contends that
Defendant violated the First and Fourteenth Amendments of the United States Constitution,
under 42 U.S.C. § 1981.  Defendant filed the present Motion to Dismiss on November 22, 2011
and, following a stipulated extension of time, Plaintiff responded on December 30, 2011.

## II.    STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has
not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v.
United States, 404 F.3d 744, 750 (3d Cir. 2005).  In Bell Atl. Corp. v. Twombly, 550 U.S. 544
(2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the
'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a
formulaic recitation of the elements of a cause of action will not do."  Id. at 555.  Following these
basic dictates, the Supreme Court, in Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937 (2009),
subsequently defined a two-pronged approach to a court's review of a motion to dismiss.  "First,
the tenet that a court must accept as true all of the allegations contained in a complaint is
inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action,

3

supported by mere conclusory statements, do not suffice." Id., 129 S. Ct. at 1949. Thus,

although "Rule 8 marks a notable and generous departure from the hyper-technical, code-

pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed

with nothing more than conclusions." Id. at 1950. Second, the Supreme Court emphasized that

"only a complaint that states a plausible claim for relief survives a motion to dismiss." Id.

"Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals

observed, be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." Id. A complaint alleges, but does not show, an entitlement to

relief when the well-pleaded facts do not permit the court to infer more than the mere possibility

of misconduct. Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232-34 (3d Cir. 2008)

(holding that: (1) factual allegations of complaint must provide notice to defendant; (2)

complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's

"'factual allegations must be enough to raise a right to relief above the speculative level.'")

(quoting Twombly, 550 U.S. at 555).

     Notwithstanding these new dictates, the basic tenets of the Rule 12(b)(6) standard of

review have remained static. Spence v. Brownsville Area Sch. Dist., No. Civ.A.08-626, 2008

WL 2779079, at *2 (W.D. Pa. July 15, 2008). The general rules of pleading still require only a

short and plain statement of the claim showing that the pleader is entitled to relief and need not

contain detailed factual allegations. Phillips, 515 F.3d at 233. Further, the court must "accept all

factual allegations in the complaint as true and view them in the light most favorable to the

plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the

court must "determine whether, under any reasonable reading of the complaint, the plaintiff may

be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III.   DISCUSSION

Defendant's Motion to Dismiss the Complaint is four-fold.  First, Defendant asserts that

Plaintiff's Title VII and PHRA claims relating to retaliation and constructive discharge must be

dismissed for failure to exhaust administrative remedies.  Second, Defendant contends that

Plaintiff has failed to plausibly allege that he was subject to any actionable discrimination and

harassment.  Third, Defendant seeks dismissal of Plaintiff's claims under 42 U.S.C. § 1981

because Section 1981 does not provide a cause of action against state actors, such as the City of

Philadelphia.  Finally, Defendant alleges that Plaintiff's claims under the First Amendment must

be dismissed because Plaintiff was not speaking as a citizen on a matter of public concern.  The

Court addresses each of these arguments individually.

### A.   Whether Plaintiff Exhausted His Administrative Remedies as to His Title VII and PHRA Claims Relating to Retaliation and Constructive Discharge

A Title VII plaintiff is required to exhaust all administrative remedies before bringing a

claim for judicial relief.  42 U.S.C. § 2000e-5(e)(1); Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir.

1996); DeLa Cruz v. Piccari Press, 521 F. Supp. 2d 424, 431 (E.D. Pa. 2007).  To do so, the

plaintiff must "fil[e] a timely discrimination charge with the EEOC [Equal Employment

Opportunity Commission]."  DeLa Cruz, 521 F. Supp. 2d at 431 (citing Waiters v. Parsons, 729

F.2d 233, 237 (3d Cir. 1984)).  The purpose of this requirement is "(1) to ensure 'that an

employer is made aware of the complaint lodged against him and is given the opportunity to take

remedial action,' and (2) to give 'the EEOC the opportunity to fulfill its statutory duties of

eliminating unlawful practices through the administrative process.'"  O'Donnell v. Michael's

5

Family Rest., Inc., No. Civ.A.07-5386, 2008 WL 2655565, at *2 (E.D. Pa. July 1, 2008) (quoting

Jackson v. J. Legis Crozer Library, No. Civ.A.07-481, 2007 WL 2407102, at *5 (E.D. Pa. Aug.

22, 2007) (citing Bihler v. Slinger Co., 710 F.2d 96, 99 (3d Cir. 1983))).[1]  In Title VII actions,

failure to exhaust administrative remedies is an affirmative defense on which the defendant bears

the burden of pleading and proof.  Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997).

      The administrative exhaustion requirement, however, "is tempered by a fairly liberal

construction given to EEOC charges." Schouten v. CSX Transp., Inc., 58 F. Supp. 2d 614, 616

(E.D. Pa. 1999).  Generally, a Title VII plaintiff cannot bring claims in a civil lawsuit that were

not first included in an EEOC charge and exhausted at the administrative level.  Burgh v.

Borough Counsel of Montrose, 251 F.3d 465, 469-70 (3d Cir. 2000); Johnson v. Chase Home

Fin., 309 F. Supp. 2d 667, 671 (E.D. Pa. 2004).  If, however, "the allegations made in the

complaint filed in this Court could be 'reasonably expected to grow out of' those contained . . . in

the EEOC charge, the pleading of the plaintiff will withstand a motion to dismiss, as the

administrative remedies available to the plaintiff will have been exhausted." Schouten, 58 F.

Supp. 2d at 616 (quoting Page v. ECC Mgmt. Servs., No. Civ.A.97-2654, 1997 WL 762789, at

*3 (E.D. Pa. Dec. 8, 1997)) (further quotations omitted).  Stated differently, where a plaintiff

attempts to assert a claim at the district court level which was not raised in the administrative

charge, the claim is considered exhausted if it is "fairly within the scope of the prior EEOC

---

[1] "Although the PHRA does not contain an analogous [exhaustion of administrative remedies] requirement, courts have held that the PHRA should be interpreted consistently with Title VII." McLaughlin v. Rose Tree Media Sch. Dist., 52 F. Supp. 2d 484, 491–92 (E.D. Pa. 1999) (citations omitted). "To bring suit under the PHRA, a plaintiff must first have filed an administrative complaint with the PHRC within 180 days of the alleged act of discrimination." Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997) (citing 43 Pa. Cons. Stat. §§ 959(a), 962).

complaint, or the investigation arising therefrom." Antol, 82 F.3d at 1295 (quoting Waiters, 729

F.2d at 237). A reasonable EEOC investigation should include claims not specifically mentioned

in the EEOC charge "where there was a close nexus between the facts supporting the claims

raised in the charge and those in the complaint." Pourkay v. City of Phila., No. Civ.A.06-5539,

2009 WL 1795814, at *5 (E.D. Pa. June 23, 2009) (citing Howze v. Jones & Laughlin Steel

Corp., 750 F.2d 1208, 1212 (3d Cir. 1984)).

　　　In the present case, Defendant argues that Plaintiff's allegations of retaliation and

constructive discharge stemming from harassment and discrimination were never exhausted

before the EEOC. Specifically, it notes that Plaintiff claims to have been retaliated against in

August 2010 and constructively discharged in September 2010, yet the last charge filed with any

administrative agency was in December 2009. (Def.'s Mem. Supp. Mot. Dismiss 5.)

Accordingly, Plaintiff's charges regarding retaliation and constructive discharge could never

have been before the EEOC or the PHRC for investigation, and, in turn, are not exhausted. (Id.

5–6.)

　　　At first blush, Defendant's argument seems to mandate dismissal. In the section of the

Complaint entitled "Administrative Procedures," Plaintiff describes his efforts to exhaust his

administrative remedies as follows:

　　　9.　　Plaintiff filed a timely charge of discrimination with the Equal Employment
　　　　　　Opportunity Commission and the Pennsylvania Human Relations
　　　　　　Commission. The Charge Number is EEOC No. 17F201060412 and PHCRC
　　　　　　Case No. 200901272 which was served on Defendant on or about December
　　　　　　1, 2009[.] Defendant filed a response on or about March 26, 2010.

　　　10.　　On or about April 7, 2011, a Notice of a right to Sue was mailed to Plaintiff
　　　　　　(See attached). Commencement of this action is within ninety (90) days of
　　　　　　receipt of this letter. Plaintiff was also advised by the Pennsylvania Human

7

Relations Commission of his right to bring suit under state law.

(Compl. ¶¶ 9–10.) At no point does Plaintiff mention any administrative complaint filed after August 2010, which would have put Defendant on notice of and allowed the EEOC to investigate the claims of retaliation and constructive discharge.

In his Response to Defendant's Motion, however, Plaintiff asserts that he filed PHEC Case Number 201003645 on January 11, 2011, and requested that it be dual-filed with the EEOC. (Pl.'s Resp. Opp'n Mot. Dismiss 6.) He goes on to note that this latest administrative complaint alleged retaliation, failure to accommodate, and constructive discharge, and was served upon Defendant on January 31, 2011. (Id.) Indeed, he contends that Defendant later "acknowledged this complaint and a request for a right-to-sue letter in correspondence to the Pennsylvania Human Relations Commission dated March 8, 2011." (Id.) Despite such allegations, though, Plaintiff fails to produce a copy of the PHEC Complaint, the right-to-sue letter, or even Defendant's March 8, 2010 letter.

This scenario leaves the Court in somewhat of a quandary. On one hand, Plaintiff has clearly failed to fully plead exhaustion. The failure to plead receipt of the right-to-sue notice, or the EEOC's refusal or failure to grant him the notice after the expiration of the 180-day period, is fatal to his Complaint. See, e.g., Burgh, 251 F.3d at 470 ("The receipt of the right-to-sue letter indicates that a complainant has exhausted administrative remedies, an essential element for bringing a claim in court under Title VII."); Holder v. Virgin Islands Water & Power Auth., No. Civ.A.1997-220, 2001 WL 1112190, at *1 (D.V.I. Sept. 17, 2001) ("Taking the allegations contained in the complaint as true, and drawing all reasonable inferences in favor of the plaintiff, the complaint fails to state a claim for a violation of Title VII since he does not allege that he

either received a right-to-sue letter from the EEOC or requested a right to sue letter which the

EEOC refused or failed to give him."). On the other hand, the Court cannot blindly ignore

Plaintiff's averments in his Response Brief that he did, in fact, file an administrative complaint

based on the retaliation and constructive termination allegations. The Third Circuit has dictated

that it is an abuse of discretion to dismiss a suit with prejudice for failure to plead exhaustion

without first granting the plaintiff leave to amend. Gooding v. Warner-Lambert Co., 744 F.2d

354, 358-59 (3d Cir. 1984).[2]  Given these dual principles, the Court will grant the Motion to

Dismiss on this claim without prejudice to Plaintiff's amending his Complaint to fully plead

exhaustion and include a copy of the most recent right-to-sue letter and/or the most recent

administrative filing. Should Plaintiff fail to properly amend his Complaint within the allotted

time, the Court will, upon motion by Defendant, dismiss this claim with prejudice.

## B.   Whether Plaintiff Fails to Plausibly Allege that He Was Subject to Discrimination and Harassment

Defendant's second argument asserts that Plaintiff's allegations in support of his Title VII

action fail to satisfy the substantive elements of a *prima facie* case of employment

discrimination. The Court disagrees.

To make out a *prima facie* case of employment discrimination, a plaintiff must

demonstrate four elements by a preponderance of the evidence: (1) that he is a member of a

protected class; (2) that he was qualified for the position; (3) that he was subject to an adverse

---

[2]  Federal Rule of Civil Procedure 15(a) generally requires that leave to amend a complaint be freely given when justice so requires, except where "it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). Defendant has put forth none of these arguments against granting leave to amend.

9

employment action despite being qualified; and (4) that non-members of the protected class were treated more favorably, i.e., that they were replaced by persons not in the protected class. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003). The specific elements of a *prima facie* case generally "depend on the facts of the particular case" before the court and "cannot be established on a one-size-fits-all basis." Jones v. Sch. Dist. of Phila., 198 F.3d 403, 411 (3d Cir.1999); see also Sarullo, 352 F.3d at 797–98.

Defendant contends that Plaintiff has not properly pled facts in support of the third prong. Specifically, Defendant asserts that Plaintiff's allegations of denial of training opportunities or being subjected to micro-management do not rise to the level of an adverse employment action. Moreover, even if such facts could constitute adverse employment actions, Defendant argues that Plaintiff "provides no evidence that he was denied training opportunities while similarly situated employees outside of his protected class were not." (Def.'s Mem. Supp. Mot. Dismiss 6.)

Defendant's Motion, however, fails on several grounds. First and foremost, Plaintiff also alleges constructive discharge which "qualifies as adverse employment action in the sense that it is the legal equivalent to actual termination." Price v. Del. Dep't. of Corr., 40 F. Supp. 2d 544, 553 (D. Del. 1999). Defendant, however, presumes that Plaintiff's constructive discharge claim is no longer in the case due to the exhaustion requirement. The Court, however, has only dismissed this claim without prejudice pending Plaintiff's filing an amended complaint properly pleading exhaustion of this claim. Until such time as Plaintiff fails to amend the Complaint or is unable to plead administrative exhaustion, the Court must assume that constructive discharge remains part of this cause of action.

10

Second, even if the constructive discharge aspect of this claim were to be dismissed, Plaintiff's claims of denial of training opportunities could, on their own, constitute adverse employment action. "In order to give rise to a claim of racial discrimination under Title VII, an adverse employment action must be 'sufficiently severe as to alter the employee's compensation, terms, conditions, or privileges of employment, or to deprive or tend to deprive [him or her] of employment opportunities or otherwise adversely affect his [or her] status as an employee.'" Davis v. City of Newark, 285 F. App'x 899, 903–04 (3d Cir. 2008) (quoting Robinson v. City of Pittsburgh, 120 F.3d 1286, 1296–97 (3d Cir. 1997)) (further quotations omitted). "Title VII specifically designates discrimination in training, 'including on-the-job-training programs' as an unlawful employment practice." Albright v. City of Phila., 399 F. Supp. 2d 575, 587-88 (E.D. Pa. 2005) (quoting 42 U.S.C. § 2000e-2(d)). This is particularly true where the lack of training substantially decreases an employee's earning potential. See, e.g. Broidy v. Am. Gen. Fin. Co., No. Civ.A.98-2728, 1999 WL 387269, at *2 (E.D. Pa. May 28, 1999) (holding that a plaintiff's allegation in a discrimination suit that she did not receive training commensurate with that provided to others in her position is sufficient to plead adverse employment action); Pajic v. Cigna Corp., No. Civ.A.89-2404, 1990 WL 191939, at *9 (E.D. Pa. Nov. 30, 1990) (holding, in a case involving retaliatory sex discrimination, that "[t]he company's denial to plaintiffs of certain training opportunities . . . constitutes an adverse employment action, or discrimination"). Because Plaintiff, in this case, has alleged that his denial of training opportunities has limited his ability to full learn his job, he has pled an adverse employment action sufficient to survive Rule 12(b)(6) scrutiny.

Finally, to the extent that Defendant contends that Plaintiff has failed to "provide . . .

11

evidence" that he was denied training opportunities while white employees were not, its argument is misplaced. At this stage of the litigation, Plaintiff need only make factual allegations in support of his claim, which, under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true. Plaintiff has no burden of producing evidence at this time, especially in light of the fact that discovery has yet to begin.

In sum, and contrary to Defendant's challenge, Plaintiff has adequately pled that he suffered an adverse employment action. Taking all factual allegations as true, Plaintiff's Complaint sets forth a plausible claim for relief under his Title VII theory. Thus, the Court denies Defendant's Motion on this ground.

### C.     Whether Plaintiff's Claims Under 42 U.S.C. § 1981 Must Be Dismissed

Count III of Plaintiff's Complaint asserts that Defendant City of Philadelphia has discriminated against him by denying him the same rights enjoyed by non-African-American employees with respect to the terms and conditions of his employment relationship in violation of 42 U.S.C. § 1981. (Compl. ¶ 36.) Via the present Motion to Dismiss, Defendant contends that the United States Supreme Court has held that § 1983 provides the exclusive remedy for violation of rights guaranteed in § 1981 by state actors. Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735 (1989). Subsequently, the Third Circuit reaffirmed this proposition. See McGovern v. City of Phila., 554 F.3d 114 (3d Cir. 2009); see also Ford v. Se. Pa. Transp. Auth., 374 F. App'x 325, 326 (3d Cir. 2010).

Plaintiff does not challenge this portion of the Motion. Indeed, he expressly concedes that controlling Third Circuit precedent dictates that § 1981 does not provide for a claim against a municipality. Accordingly, Defendant's Motion to Dismiss this claim is granted.

### D.    Whether Plaintiff's Claims Under the First Amendment Must Be Dismissed

The final component of Defendant's Motion to Dismiss challenges the substance of

Count III of the Complaint, which claims violations of the First and Fourteenth Amendments of

the United States Constitution.[3]  Specifically, Defendant argues that the speech at issue does not

constitute the speech of a citizen on a matter of public concern, as required for First Amendment

protection.

When a free speech retaliation claim is brought by a public employee against his

employer, liability turns on a three-step analysis.  Feldman v. Phila. Hous. Auth., 43 F.3d 823,

829 (3d Cir. 1994).  The plaintiff must initially establish: (1) that his speech constituted protected

activity and (2) that it was a substantial or motivating factor for the alleged retaliatory conduct.

Id.; see also Baldassare v. State of N.J., 250 F.3d 188, 194–95 (3d Cir. 2001).  At the third step,

the public employer can avoid liability by demonstrating by a preponderance of the evidence that

the same decision would have been reached even in the absence of the protected conduct.

Feldman, 43 F.3d at 829; Baldassare, 250 F.3d at 195.

Under step one, the First Amendment protects speech by a government employee only

when it relates to a matter of public concern.  Connick v. Myers, 461 U.S. 138, 146 (1983).

Speech involves a matter of public concern if it can be "fairly considered as relating to any matter

of political, social or other concern to the community."  Id.  "Whether the public employee's

---

[3]  Although Plaintiff brought this claim against Defendant under § 1981, which, as noted above,
is not the proper remedial provision, the Court must consider whether Plaintiff should be given
leave to amend this Complaint to style the claim as a § 1983 action.  In other words, the Court
must conduct a "futility" analysis, which means to consider whether "the complaint, as amended,
would fail to state a claim upon which relief could be granted."  Holst v. Oxman, 290 F. App'x
508, 516 (3d Cir. 2008).

speech relates to matters of importance to the community, as opposed to those merely of personal

interest, presents the threshold issue in a First Amendment retaliation claim because 'absent the

most unusual circumstances, a federal court is not the appropriate forum in which to review the

wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's

behavior.'" Abrams v. Port Auth. Trans-Hudson Corp., No. Civ.A.07-4975, 2010 WL 3810642,

at \*3 (D.N.J. Sept. 23, 2010) (quoting Watters v. City of Phila., 55 F.3d 886, 892 (3d Cir. 1995)

(quoting Connick, 461 U.S. at 147)), aff'd __ F. App'x __, 2011 WL 4361524 (3d Cir. Sept. 20,

2011). The question of whether speech rises to the level of constitutionally-protected conduct

remains a question of law for the Court. Feldman, 43 F.3d at 829; Baldassare, 250 F.3d at 195.

Plaintiff now baldly contends that all allegations of racial discrimination are matters of

public concern. In support of this claim, he cites the Third Circuit case of Azzaro v. County of

Allegheny, 110 F.3d 968, 977-78 (3d Cir. 1997). In that case, the Third Circuit held that an

employee's report of sexual harassment by the assistant of a county commissioner occurring in

the commissioner's office constituted speech that was a "matter of public concern." Id. at

978–79. Specifically, it stated,

> We believe that this form of discrimination, when practiced by those exercising
> authority in the name of a public official, is as much a matter of public concern as
> racial discrimination practiced under similar circumstances. We also believe that [the
> plaintiffs] communications to [her supervisors] brought to light actual wrongdoing
> on the part of one exercising public authority that would be relevant to the
> electorate's evaluation of the performance of the office of an elected official.

Id. at 978. Other cases involving similar facts of discrimination by an elected or high-ranking

official have followed suit in their holdings. Dohner v. Clearfield Cnty., Pa., No. Civ.A.08-52,

2009 WL 2762548, at \*22–23 (W.D. Pa. Aug. 28, 2009) (holding that plaintiff who made a

14

statement to the county commissioners regarding gender discrimination by an elected

commissioner was a matter of public concern); Costenbader-Jacobson v. Pennsylvania, 227 F.

Supp. 2d 304, 312 (M.D. Pa. 2002) (holding that complaints of continuing discrimination at the

hands of a public official serving as Director of a highly advertised statewide lottery program,

and the retaliation by the Secretary of the Department of Revenue touched on matters of public

concern).

Notably, however, the Third Circuit's decision in Azzaro placed some crucial limitations

on the scope of its holding. Specifically, it expressly declined to opine on the situation where a

public employee files "a complaint about an isolated incident . . . on the part of a non-supervisory

co-worker." Id. at 978 n.4. Further, it emphasized that the alleged conduct in that case was

"relevant to the electorate's evaluation of the performance of the office of an elected official,"

because the alleged culprit was the direct subordinate of a public official. Id. at 978. Subsequent

cases involving allegations unrelated to the performance of an elected official have seized on

these distinctions and required a plaintiff's speech to allege a widespread pattern of

discrimination, as opposed to an isolated incident or one confined to the plaintiff alone. For

example, in Bell v. City of Philadelphia, 275 F. App'x 157 (3d Cir. 2008), the plaintiff was an

African-American male who worked at the Philadelphia District Attorney's office. Id. at 159.

After a history of workplace incidents that resulted in his discipline and eventual termination, he

brought suit against the City of Philadelphia claiming gender discrimination, race discrimination,

and retaliation for his exercise of his rights of free speech and association. Id. The Third Circuit

affirmed dismissal of the First Amendment claim, finding that the plaintiff's complaints, "which

sought not to expose discriminatory or harassing practices or policies at the District Attorney's

15

Office, but complained solely about his own 'abuse' and mistreatment by superiors and co-workers" were not a matter of public concern. Id.

Lower courts within the Third Circuit have likewise made this distinction. See, e.g., Middleton v. Deblasis, No. Civ.A.11-4124, 2011 WL 6934095, at *4–5 (E.D. Pa. Dec. 30, 2011) (holding that speech regarding sexual and racial discrimination was not a matter of public concern where plaintiff did not allege misconduct by an elected official or his or her direct subordinate and did not allege a wider pattern of inappropriate conduct beyond herself); Miles v. City of Phila., No. Civ.A.11-4040, 2011 WL 4389601, at *4 (E.D. Pa. Sept. 21, 2011) (holding that plaintiff did not speak on a matter of public concern because although she claimed that government officials engaged in sexual harassment/discrimination, "as pled, her allegations [did] not implicate defendants in a pattern of conduct directed at anyone other than her"); McCartney v. Penn State Police, No. Civ.A.09-1817, 2011 WL 3418381, at *31 (M.D. Pa. Mar. 9, 2011) (holding that plaintiff must allege a "wider pattern of inappropriate conduct" beyond her own perceived harassment in order for allegations to constitute speech on a matter of public concern); Abrams v. Port Auth. Trans-Hudson Corp., No. Civ.A.07-4975, 2010 WL 3810642, at *3 (D.N.J. Sept. 23, 2010) (noting the distinction between complaints of race discrimination which target or seek to expose a policy or practice of discrimination by a public entity (matters of public concern) or complaints of race discrimination which relate solely to the plaintiff's experience in being denied the employment position desired (matters of private interest only)).

In the present case, Plaintiff avers only that he was subjected to various forms of harassment and discrimination. (Compl. ¶¶ 16–19.) He goes on to state that, "[i]n 2009 Plaintiff began complaining to his supervisors that he believed that he was subject to disparate treatment

16

and harassment because of his race." (Id. ¶ 20.) Notably absent from this statement is any allegation that Plaintiff complained about a general practice of discrimination by his supervisors or suggested that they were doing something similar to others of his race. Rather, he complained only about his own mistreatment. Further, nothing in the Complaint indicates that his supervisors were either public officials or direct subordinates of public officials, such that their misconduct would be of concern to the electorate. As such, the Court deems the alleged protected speech to be outside the realm of "public concern."[4]

---

[4]     Defendant's argument that Plaintiff's complaints of discrimination were not matters of public concern relies almost exclusively on the Supreme Court case of Duryea v. Guarnieri, __ U.S. __, 131 S. Ct. 2488 (2011). In that case, a police chief brought a § 1983 action against a municipality challenging directives instructing him on how to perform his duties as violative of his First Amendment right to petition for redress of grievances. Id. at 2492. These directives were issued by borough counsel following the plaintiff's reinstatement to his position—after being fired—pursuant to his union grievance proceeding. Id. The Court found that:

> The government can and often does adopt statutory and regulatory mechanisms to protect the rights of employees against improper retaliation or discipline, while preserving important government interests. . . . Employees who sue under federal and state employment laws often benefit from generous and quite detailed antiretaliation provisions. . . . These statutory protections are subject to legislative revision and can be designed for the unique needs of State, local, or Federal Governments, as well as the special circumstances of particular governmental offices and agencies. The Petition Clause is not an instrument for public employees to circumvent these legislative enactments when pursuing claims based on ordinary workplace grievances.

Guarnieri, 131 S. Ct. at 2497.
        Guarnieri, however, is not as instructive in this case as Defendant seems to believe. In that matter, the Supreme Court determined only that the "matter of public concern" test for public-employee Speech Clause cases should be an element for public-employee Petition Clause cases. In doing so, it imported the "public concern" analysis from the Speech Clause into the Petition Clause, explaining that "[i]f a public employee petitions as an employee on a matter of purely private concern, the employee's First Amendment interest must give way, as it does in speech cases." Id. at 2500 (citing San Diego v. Roe, 543 U.S. 77, 82–83 (2004)). Nonetheless, while the Supreme Court cautioned against the application of the Petition Clause to govern internal employment matters, such as "working conditions, pay, discipline, promotions, leave, vacations, and

17

Given the foregoing discussion, Plaintiff's First Amendment cause of action shall be dismissed without prejudice. When filing an amended complaint, Plaintiff may attempt to remedy any pleading deficiencies both as to the statutory provision under which this claim should be brought and in the actual substance of this claim.

## IV. CONCLUSION

In sum, the Court grants Defendant's Motion to Dismiss Counts I, II, and III. Notably, however, this dismissal is without prejudice. Plaintiff has twenty days from the date of the accompanying Order to file an amended complaint accounting for the errors identified in this Memorandum. Should Plaintiff be unwilling or unable to do so within the allotted time, the Court shall, upon proper motion by Defendant, dismiss the entire case with prejudice.

---

terminations," id. at 2496, it never went so far as to hold that government employees are not protected by the First Amendment from retaliation for any type of speech or petition that is motivated by personal concerns. Indeed, Guarnieri did not involve complaints about discrimination or harassment of a protected class, nor did it intimate that such complaints could not serve as the basis of a First Amendment violation. Rather, it simply emphasized that a suit under the First Amendment is not proper where an employer retaliates against an employee for petitioning about an ordinary workplace grievance. Id. at 2497; see also Bartos v. Pennsylvania, No. Civ.A.08-366, 2011 WL 4592383, at *5 (M.D. Pa. Sept. 30, 2011) (similarly interpreting Guarnieri and noting that government employees remain protected for internal grievances that relate to matters of public concern).

18