IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT LUCAS, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, | : | |
| | : | NO. 11-4376 |
| Defendant. | : | |

**MEMORANDUM**

BUCKWALTER, S. J.                                                                                              May 2, 2012

Currently pending before the Court is a Motion to Dismiss Counts V and VI of the Amended Complaint by Defendant City of Philadelphia ("Defendant" or "the City"). For the following reasons, the Motion is denied.

**I.   FACTUAL HISTORY**

According to the facts set forth in the Amended Complaint, Plaintiff Robert Lucas, an African-American male, was a full-time employee of the City of Philadelphia Water Department ("Water Department") from February 16, 1998 until September 16, 2010. (Am. Compl. ¶¶ 6, 12.) In September 1999, Plaintiff began to work at the Flow Control Department as a maintenance apprentice in instrumentation at the Water Department's office located at 3801 Fox Street, Philadelphia, Pennsylvania. (Id. ¶¶ 3, 13.) After testing and qualifying, Plaintiff became an electronic technician and eventually was classified as an electronic technician II. (Id. ¶ 14.)

From 2000 to 2009, Plaintiff's supervisor was Harry Adams. (Id. ¶ 15.) Following Adams's promotion, Frank Francesco became Plaintiff's supervisor. (Id.) Both Adams and Francesco habitually excluded Plaintiff from most training opportunities, which inhibited his ability to fully learn his job and to qualify for more work opportunities and overtime. (Id. ¶ 16.) For example, the supervisors would not allow him to attend presentations on new equipment, while inviting white employees to attend and participate. (Id.) In addition, he was the only electronic technician II not allowed to rotate equipment and trucks, which impaired his ability to be trained on certain pieces of equipment. (Id.) Moreover, Francesco would micro-manage Plaintiff's work, to an extent not experienced by white employees, by coming out to Plaintiff's job site every day just to observe his work, inspect his mileage sheets, review work, and correct alleged errors in front of other employees. (Id. ¶ 17.) The supervisors also changed Plaintiff's paperwork without properly annotating the changes. (Id. ¶ 18.) Finally, Francesco made comments about Plaintiff taking a lunch breach outside of his work area, while white employees were not chastised for the same thing. (Id. ¶ 19.)

In 2009, Plaintiff began complaining to his supervisors about the purported disparate treatment and harassment because of his race. (Id. ¶ 20.) His supervisors ignored and laughed off his complaints without conducting any investigation. (Id.) As alleged retaliation for these complaints, Plaintiff was issued a five-day suspension and given a negative review in August 2010. (Id. ¶ 21.) No other workers were given any reviews that August, and this was Plaintiff's first negative review since he had been employed by Defendant. (Id.)

As a result of Defendant's purported discrimination, harassment, and retaliation, Plaintiff suffered from stress and an anxiety disorder. (Id. ¶ 22.) When his doctor recommended that he

not return to his then-current work environment, Plaintiff contacted an individual named Maxine Maluso about transferring to another work location. (Id. ¶ 23.) She denied his request and told him that his only option was to return to Fox Street. (Id.) Because Plaintiff felt he could not physically work at Fox Street due to the discriminatory conditions, he was "constructively discharged" from his job in September 2010. (Id. ¶ 24.)

On July 7, 2011, Plaintiff initiated the current action. On February 13, 2012, this Court granted Defendant's Motion to Dismiss without prejudice to Plaintiff's right to file an Amended Complaint. Plaintiff availed himself of this opportunity and, on February 29, 2012, filed a First Amended Complaint setting forth six causes of action. Count I asserts a violation of the Civil Rights Act of 1964 ("Civil Rights Act"), 42 U.S.C. § 2000e, et seq., due to race discrimination. (Id. ¶¶ 25–29.) Count II claims a violation of the Pennsylvania Human Relations Act ("PHRA"), 42 Pa.C.S. § 951, et seq. (Id. ¶¶ 30–34.) Count III contends that Defendant violated the Civil Rights Act by retaliating against him. (Id. ¶¶ 35–39.) Count IV sets forth a corresponding retaliation claim under the Pennsylvania Human Relations Act. (Id. ¶¶ 40–44.) Count V claims disability discrimination and failure to accommodate under the PHRA. (Id. ¶¶ 45–48.) Finally, Count VI asserts a violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. (Id. ¶¶ 49-52.) Defendant filed a second Motion to Dismiss on March 15, 2012, seeking dismissal of only Counts V and VI of the Amended Complaint. Plaintiff responded on April 2, 2012, making the present Motion ripe for consideration.

## II.   STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R.

Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 555.  It emphasized that it would not require a "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  Id. at 570.

In the subsequent case of Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court enunciated two fundamental principles applicable to a court's review of a motion to dismiss for failure to state a claim.  First, it noted that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678.  Thus, although "[Federal] Rule [of Civil Procedure] 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  Id. at 678–79.  Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss."  Id. at 679.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

Notwithstanding the foregoing, nothing in Twombly or Iqbal has altered some of the fundamental underpinnings of the Rule 12(b)(6) standard of review.  Arner v. PGT Trucking, Inc., No. Civ.A.09-0565, 2010 WL 1052953, at *2 (W.D. Pa. Mar. 22, 2010); Spence v. Brownsville Area Sch. Dist., No. Civ.A.08-0626, 2008 WL 2779079, at *2 (W.D. Pa. July 15,

2008). Federal Rule of Civil Procedure 8 requires only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. Fed. R. Civ. P. 8; Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

### III.   DISCUSSION

The present Motion seeks dismissal of Counts V and VI of Plaintiff's Amended Complaint, both of which allege disability discrimination. The entire substance of Defendant's challenge to Plaintiff's disability discrimination claim states as follows:

> Plaintiff alleges that as a result of Defendant's discrimination, harassment and retaliation, he suffered from stress and anxiety disorder. Am. Compl., ¶22. These disorders allegedly prevented him from returning to his "then-current work environment." *Id.* Based on his condition, Plaintiff requested a transfer to another work location, which was denied. Plaintiff claims that because he could not physically work at his location he was forced to leave his job in September, 2010. *Id.* at ¶¶ 23-24. Plaintiff has not alleged that he was able to perform the essential functions of his job, with or without a transfer from his then-current location. As such, his claims of discrimination under the PHRA and ADA as set forth in Counts V and VI must be dismissed.

(Def.'s Mem. Supp. Mot. Summ. J. 5.)

This argument not only misconstrues the law regarding disability discrimination, but misapplies the standards on a Rule 12(b)(6) Motion. To set forth a *prima facie* case of discrimination under the ADA, a plaintiff must demonstrate that "'(1) he is a disabled person

within the meaning of the Act; (2) he is otherwise qualified to perform the essential functions of his job, with or without reasonable accommodations by his employer; and (3) he has suffered an otherwise adverse employment decision as a result of the discrimination.'" Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000) (quoting Gaul v. Lucent Techs., Inc., 134 F.3d 576, 580 (3d Cir. 1998)); see also Ramage v. Rescot Sys. Grp., Inc., ___ F. Supp. 2d ___, No. Civ.A.10-1120, 2011 WL 6046899, at *4 (E.D. Pa. Dec. 6, 2011).[1]  Satisfaction of the second element—which is at the heart of the present Motion—requires consideration of a two-part test.  First, a court must determine whether "'the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc.'" Gaul, 134 F.3d at 580 (quoting 29 C.F.R. pt. 1630, App. at 353–54).  Second, the court must determine "'whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation.'" Id. (quoting 29 C.F.R. pt. 1630, App. at 353).

> The ADA regulations describe the term "reasonable accommodation" as:
>
> (i) Modifications or adjustments to a job application process that enable a qualified applicant with a disability to be considered for the position such qualified applicant desires; or
>
> (ii) Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position; or
>
> (iii) Modifications or adjustments that enable a covered entity's employee with a

---

[1] Notably, the ADA and the PHRA are to be interpreted consistently and have the same standard for determination of liability.  Macfarlan v. Ivy Hill SNF, LLC, ___ F.3d ___, 2012 WL 1034238, at *6 (3d Cir. Mar. 29, 2012).

> disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities.

29 C.F.R. § 1630.2(o). It goes on to note that reasonable accommodations may include:

> (i) Making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
>
> (ii) Job restructuring; part-time or modified work schedules; reassignment to a vacant position; acquisition or modifications of equipment or devices; appropriate adjustment or modifications of examinations, training materials, or policies; the provision of qualified readers or interpreters; and other similar accommodations for individuals with disabilities.

Id. Repeatedly, courts have found that transfer to another position or another office within a company may constitute a "reasonable accommodation." See, e.g., Gile v. United Airlines, Inc., 95 F.3d 492, 498 (7th Cir. 1996) ("[A]n employer may be obligated to reassign a disabled employee only when, even with reasonable accommodation, the employee can no longer perform the essential functions of his present job."); Geuss v. Pfizer, Inc., 971 F. Supp. 164, 173 (E.D. Pa. 1996) ("[A]n employer is required to offer transfer to another facility when there is a practice of the employer doing so."). Ultimately, however, the questions of what functions are "essential" and whether a proposed accommodation is "reasonable" are factual inquiries. Williams v. Phila. Hous. Auth. Police Dept., 380 F.3d 751, 771 (3d Cir. 2004); Turner v. Hershey Chocolate U.S., 440 F.3d 604, 612 (3d Cir. 2006).

In the present case, Plaintiff adequately pleads that he "satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc.'" Gaul, 134 F.3d at 580. Specifically, he alleges that "[h]e was qualified for his position and performed at or above expectations at all relevant times" (Am. Compl. ¶ 12); that he originally began to work at the Flow Control Department in September 1999 as a

7

maintenance apprentice" (id. ¶ 13); and that "[a]fter testing and qualifying, [he] became an electronic technician . . . [and] eventually was classified as an electronic technician II." (Id. ¶ 14.)  At no point does Defendant dispute that Plaintiff met all of the appropriate educational, skill, and experience requirements of this job.

Second, Plaintiff sufficiently alleges that he could "perform the essential functions of the position held or desired, with or without reasonable accommodation.'" Gaul, 134 F.3d at 580.  Plaintiff's alleged disability of stress and an anxiety disorder—an allegation not challenged by Defendant—purportedly prevented him from working at his then-current location because it was exacerbated by the disparate treatment and harassment perpetrated by his supervisors.  (Am. Compl. ¶¶ 20, 22, 24.)  Defendant does not attempt to claim that Plaintiff's physical presence at the Fox Street location—as opposed to another office location—was an essential function of his employment.  Further, contrary to Defendant's argument, Plaintiff did not need to explicitly say that he would have been able to perform the essential functions of his job if given a transfer.  Rather, accepting as true "all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view[ing] them in the light most favorable to the plaintiff," Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quotations omitted), the Court can reasonably surmise that Plaintiff was capable of performing the essential functions of his job in a different office where he could escape the racially harassing environment.  (Id. ¶¶ 23-24.)  For purposes of the present Rule 12(b)(6) Motion, Plaintiff's allegations are therefore sufficient to "raise his right to relief above the speculative level." Twombly, 550 U.S. at 555.

In light of the foregoing, the Court must deny Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6).  An appropriate order follows.